**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| THOMAS MCLAUGHLIN and MICHAEL MIGLIO,<br><br>Plaintiffs,<br><br>v.<br><br>BROCK PIERCE and SCOTT WALKER,<br><br>Defendants. | No. 3:26-cv-00303<br><br>Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley |

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Defendants Brock Pierce and Scott Walker (collectively, "Defendants"), by and through their undersigned counsel, respectfully move this Court for an Order dismissing the Complaint (Docket No. 1) filed by the remaining Plaintiffs, Thomas McLaughlin and Michael Miglio, pursuant to: (1) Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over both Defendants; (2) Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, specifically the failure to plead a plausible RICO claim under 18 U.S.C. § 1962; and (3) Federal Rule of Civil Procedure 12(f) to strike scandalous, immaterial, and impertinent matter from the Complaint.

For the reasons explained more thoroughly below, Defendants respectfully request that this Court: (a) Dismiss the Complaint in its entirety for lack of personal jurisdiction; (b) alternatively, dismiss Count 1 (RICO) for failure to state a claim upon which relief can be granted and decline to exercise supplemental jurisdiction over the remaining state-law claims; (c) strike the scandalous, salacious and immaterial allegations identified herein; and (d) grant such other relief as this Court deems just and proper.

## INTRODUCTION

This case has no business in Tennessee. Neither Defendant resides here; neither Plaintiff resides here; and the events giving rise to Plaintiffs' claims occurred outside this District. Defendants Brock Pierce ("Pierce") and Scott Walker ("Walker") are domiciled in Puerto Rico. Plaintiff McLaughlin resides in New Jersey; Plaintiff Miglio resides in Colombia. The alleged transactions occurred in Puerto Rico, New York, Las Vegas, and abroad -- everywhere, but Tennessee. The sole Tennessee connection -- a three-day industry conference attended by thousands -- is constitutionally insufficient to hale Puerto Rico residents into this forum. This Court should dismiss the Complaint in its entirety for lack of personal jurisdiction under Rule 12(b)(2).

Dismissal is also independently warranted under Rule 12(b)(6) because Plaintiffs' sole federal claim -- civil RICO -- is fatally defective on multiple independent grounds, each sufficient standing alone to require dismissal with prejudice. The RICO claim fails because: (1) the alleged "enterprise" is indistinguishable from the RICO "persons," violating the distinctness requirement; (2) the Complaint fails to allege a cognizable "pattern" of racketeering activity; (3) the fraud predicates are not pled with the particularity required by Rule 9(b); (4) the Private Securities Litigation Reform Act (the "PSLRA") bars RICO claims predicated on securities fraud; (5) Plaintiffs lack RICO standing; and (6) the gambling and money-transmitting predicates have no causal nexus to Plaintiffs' injuries. Once the RICO claim is dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining state-law claims.

Finally, the Complaint is replete with scandalous, immaterial, and inflammatory allegations -- including guilt-by-association references to Jeffrey Epstein and, separately, a convicted pedophile who previously employed a teenage Brock Pierce almost 30 years ago, a third-party poker game theft that admittedly has nothing to do with Defendants (neither of whom was

present), and gratuitous characterizations of "drug and alcohol induced benders" -- that should be stricken under Rule 12(f) because they are plainly designed to harass, tarnish the Defendants' reputations and embarrass, rather than to state a cognizable claim. These allegations serve no legitimate pleading purpose; they are included solely to inflame and prejudice.

This Court already has denied Plaintiffs' emergency motions for a Temporary Restraining Order ("TRO") and asset freeze on two occasions (Docket Nos. 7, 16), holding that Plaintiffs failed to show irreparable harm and that such prejudgment relief "has been unavailable to a prejudgment creditor for more than 200 years of American jurisprudence." (Docket No. 16). The Court further observed that the Complaint "requests only monetary relief and contains no request for injunctive or declaratory relief." (Docket No. 16). Plaintiffs' failed TRO applications foreshadow the fundamental deficiencies pervading the Complaint: a jurisdictionally improper forum, a legally deficient RICO claim that cannot survive even the most generous reading of the pleading standards, and a parade of scandalous allegations designed to harass and embarrass rather than state cognizable claims.

## **PROCEDURAL AND FACTUAL BACKGROUND**

On March 13, 2026, four plaintiffs -- Thomas McLaughlin (resident of New Jersey), Tim Flaherty (resident of Arizona), Jake Flaherty (resident of Arizona), and Michael Miglio (resident of Colombia) -- filed this action against Defendants Pierce and Walker, both of whom are residents and domiciliaries of Puerto Rico. (Compl. ¶¶ 3–8.)

On or about April 28, 2026, two of the original four Plaintiffs sought voluntary dismissal. (Docket No. 19). By Order dated May 13, 2026 (Docket No. 20), the Court dismissed with prejudice the claims of Tim Flaherty and Jake Flaherty and terminated them as parties. The only remaining Plaintiffs are McLaughlin and Miglio.

The Complaint asserts one federal claim -- civil RICO under 18 U.S.C. § 1962(c) (Count 1) -- together with state-law claims for fraud (Count 2), breach of the covenant of good faith and fair dealing (Count 3), alter ego (Count 4), and punitive damages (Count 5). (Compl. ¶¶ 104–129.) The Complaint invokes federal-question jurisdiction under 28 U.S.C. § 1331 as the sole basis for subject-matter jurisdiction. (*Id.* ¶ 9.)

Both Defendants waived service of the summons and Complaint. Pursuant to Federal Rule of Civil Procedure 4(d)(5), such waiver does not waive any defense to the action, including objections to personal jurisdiction and venue.

On March 17, 2026, this Court denied Plaintiffs' second Motion for a Temporary Restraining Order and Asset Freeze (Docket No. 16), holding that Plaintiffs failed to demonstrate irreparable harm and that the requested prejudgment asset freeze was foreclosed by *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).

## LEGAL STANDARDS

### I. Rule 12(b)(2): Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction exists. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). Where, as here, the Court rules on a motion without holding an evidentiary hearing, the plaintiff must make a *prima facie* showing of personal jurisdiction by setting forth specific facts, as opposed to mere conclusory allegations, establishing jurisdiction. *See id.* The Court construes the pleadings and affidavits in the light most favorable to the plaintiff, but does not accept bare legal conclusions. *See id.* Critically, "[t]he plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set

forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

## II. Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Where claims sound in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard requiring particularity as to the (1) "time, place, and content of the alleged misrepresentation," (2) "the fraudulent scheme," (3) "the fraudulent intent of the defendants," and "the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)). RICO claims predicated on mail or wire fraud must satisfy this heightened standard. *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). The failure to plead fraud with the requisite particularity is fatal to a RICO claim. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).

## III. Rule 12(f): Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the Court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Matter is

"scandalous" if it improperly casts a derogatory light on someone, usually through allegations that are irrelevant to the claims at issue. *See Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Matter is "immaterial" if it has 'no bearing on the subject matter of the litigation,' while '[i]mpertinent allegations include statements that are not necessary to the issues presented.'" *United States ex rel. St. Paul's Found. v. Wipperman*, No. 3:24-CV-00750, 2026 WL 622769, at *1 (M.D. Tenn. Mar. 5, 2026) (citation omitted). While courts have discretion in ruling on motions to strike, "[a] scandalous matter 'refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Id.* (citation omitted). Striking an allegation is appropriate if it is "clearly immaterial to the controversy" or "prejudice[s] the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 867 (N.D. Ohio 2009) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

## ARGUMENT

### I. The Complaint should be dismissed for lack of personal jurisdiction over Defendants pursuant to Rule 12(b)(2)

#### A. No General Jurisdiction Exists Over Defendants in Tennessee

An individual is subject to general (all-purpose) jurisdiction only in the state of his domicile. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The Complaint's own allegations defeat general jurisdiction: Defendant Pierce resides in Dorado, Puerto Rico (Compl. ¶ 8); Defendant Walker resides in San Juan, Puerto Rico (*Id.* ¶ 7). Neither Defendant is domiciled in Tennessee, and the Complaint contains no allegation -- nor could any truthful allegation -- that Defendants' contacts with Tennessee are so "continuous and systematic" as to render them "essentially at home" here. *See Daimler*, 571 U.S. at 127. General jurisdiction is

absent as a matter of law, and therefore, this Court should dismiss the Complaint on that basis alone.

### B. No Specific Jurisdiction Exists Because Defendants Did Not Purposefully Avail Themselves of Tennessee

Tennessee's long-arm statute, Tenn. Code Ann. §§ 20-2-214, 20-2-225, extends to the full limits of federal due process. *See Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.*, 761 F. Supp. 2d 726, 731 n.5 (M.D. Tenn. 2011) (citations omitted). The inquiry therefore collapses into the constitutional analysis under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The Sixth Circuit applies the three-part Southern Machine test for specific jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Southern Machine Co. v. Mohasco Indus*., 401 F.2d 374, 381 (6th Cir. 1968).

The Supreme Court has made clear that the relevant contacts must be with the forum state itself -- not with persons who happen to reside there. *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum." The due-process analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). This principle is dispositive here: neither remaining Plaintiff resides in Tennessee. McLaughlin resides in New Jersey, and Miglio resides in Colombia. (Compl. ¶¶ 3, 6.) There is no Tennessee plaintiff, no Tennessee transaction or activity, no Tennessee defendant and no Tennessee injury. The Complaint identifies <u>no</u> contact between Defendants and Tennessee that would support the exercise of specific jurisdiction.

The Complaint fails to establish that Defendants purposefully directed any activities toward Tennessee. The entire case arises from alleged investment transactions and employment relationships formed and executed outside this District. The alleged wrongdoing occurred in Puerto Rico (where Defendants reside and DNA was headquartered), New York (Wall Street transactions), Las Vegas (the 2025 Bitcoin conference where Miglio was recruited), and various international locations. Tennessee's only asserted connection to this dispute is a three-day industry conference that thousands of people from across the nation attended. A defendant's fleeting presence at a transitory, nationwide conference that happened to be held in a particular state is insufficient to establish personal jurisdiction over that defendant for claims unrelated to the conference. *See, e.g., Miller Indus. Towing Equip. Inc. v. NRC Indus.*, No. 1:19-CV-00095, 2020 WL 1897171, at *5 (E.D. Tenn. Apr. 16, 2020). This Court should decline to assert jurisdiction over Puerto Rico residents for claims arising from business relationships formed and executed elsewhere.

C. <u>The Nashville Conference Does Not Establish Purposeful Availment</u>

Plaintiffs bear the burden of establishing purposeful availment, yet a plain reading of the Complaint makes clear that absolutely no relevant facts supporting their alleged claims stem from or took place in Tennessee. The Complaint's jurisdictional theory rests entirely on Defendants' presence at the Bitcoin 2024 conference in Nashville from July 25–27, 2024 and presentations at "DNA House" at the Cannery House. (Compl. ¶¶ 42–47.) This is constitutionally insufficient. Attending or presenting at a single, transitory, nationwide industry conference does not constitute purposeful availment of the privilege of conducting activities within the host state. *Cf. See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 523 (6th Cir. 2006).

The Bitcoin conference is a traveling event that convenes in different cities each year -- Miami, Las Vegas, and other locations. Defendants did not direct their activities toward Tennessee nor choose Tennessee as a place to conduct business; they simply attended an industry gathering that happened to be located in Nashville that year. "[A] defendant's contacts with the forum State must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The conference is precisely the type of "random, isolated, or fortuitous" contact that cannot support personal jurisdiction. *See id.*

Mere attendance at a conference or trade show in the forum state does not establish purposeful availment. *See, e.g., Tech. for Energy Corp. v. Hardy*, No. 3:16-CV-91, 2018 WL 8460253, at *6 (E.D. Tenn. Jan. 22, 2018); *Kraemer v. WhizCut Am. Inc.*, No. 1:16-CV-2364, 2017 WL 2119342, at *4 (N.D. Ohio May 16, 2017) (dismissing for lack of personal jurisdiction where the only non-internet contact was Defendant's agent appearing at a trade show in the forum). As the Supreme Court has explained, "a defendant's contacts with the forum State must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359. Conference attendance -- particularly at an event that rotates among cities nationwide -- is the paradigmatic example of a fortuitous contact insufficient to support jurisdiction.

Accordingly, the Bitcoin 2024 conference does not provide a jurisdictional hook sufficient to hale Puerto Rico residents into a Tennessee federal court -- where also no plaintiff resides -- for claims arising from investment relationships formed and executed outside this forum. The Court should dismiss for lack of personal jurisdiction.

D. <u>The Remaining Plaintiffs' Claims Do Not Arise From Tennessee Activities</u>

Even assuming the Nashville conference constituted some minimal contact with Tennessee -- which Defendants deny -- specific jurisdiction requires that the claims "arise out of or relate to"

that contact. *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (cleaned up). There must be "an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919. The Complaint does not -- and cannot -- establish that the remaining Plaintiffs' claims arose from any Tennessee activity.

McLaughlin's claims arise from the Coral/DNA merger that closed in October 2024 (Compl. ¶ 66). While the Complaint alleges that some conversations "continued into" the Nashville conference (¶ 42), the gravamen of McLaughlin's injury -- the alleged loss of value in his Coral position -- stems from a merger transaction not alleged to have occurred in Tennessee and occurring well after the Nashville conference. (Compl. ¶ 66). A passing conversation at a conference does not transform a multi-month, multi-jurisdiction transaction into one "arising from" Tennessee activities. *See Ford Motor Co.*, 592 U.S. at 362 (claim must arise from activities defendant "purposefully directed" at forum). Neither Pierce nor Walker directed or conducted merger-related activities at Tennessee.

Miglio's claims have no connection whatsoever to Tennessee. Miglio was recruited in Las Vegas at the May 2025 Bitcoin conference and was terminated in January 2026. (Compl. ¶¶ 69, 99). His claims arise from the "Crypto Knights" television show (filmed outside Tennessee in August 2024) (Compl. ¶¶ 32–34), and his employment relationship with DNA. (Compl. ¶¶ 96-103). Miglio's alleged injuries -- lost equity, lost salary, and termination (Compl. ¶ 109) -- have no nexus whatsoever to Nashville. Tennessee played no role in any aspect of Miglio's relationship with Defendants outside Tennessee.

Because neither McLaughlin's nor Miglio's claims arises from or relates to any Tennessee activity by Defendants, specific personal jurisdiction is lacking. The Court should dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2).

E. RICO Nationwide Service Does Not Save Jurisdiction

Having failed to establish either general or specific jurisdiction over Defendants, Plaintiffs cannot resort to RICO's nationwide service provision to fill the gap. Section 1965(b) of the RICO statute permits nationwide service of process, but only in narrow circumstances: "[i]n any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b). The Sixth Circuit has held that this provision applies *only* where "personal jurisdiction based on minimum contacts is established as to at least one defendant." *Hall v. Trivest Partners, L.P.*, 178 F.4th 986, 990 (6th Cir. 2026) (quoting *Peters Broad. Eng'g v. 24 Capital*, 40 F.4th 432, 440 (6th Cir. 2022)). For the reasons discussed above, the Court does not have personal jurisdiction over either Defendant in connection with Plaintiffs' claims. Accordingly, civil RICO's personal jurisdiction statute does not change the personal jurisdiction analysis.

Even if § 1965(b) could theoretically apply, it still would be insufficient to confer personal jurisdiction for two reasons. First, the Sixth Circuit Court of Appeals never has recognized the doctrine, which is called "pendent jurisdiction," by which a plaintiff may use a federal statute's nationwide service of process provision to obtain personal jurisdiction over state law claims for which a court otherwise lacks forum-contact jurisdiction. *See Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 401 (6th Cir. 2021). Second, and more fundamentally, Plaintiffs cannot obtain jurisdiction under § 1965(b) because they have failed to state a civil RICO claim. As demonstrated below (*see* Argument II, *infra*), the RICO claim is fatally defective on multiple independent grounds. A jurisdictional provision designed to facilitate RICO enforcement cannot bootstrap jurisdiction where the underlying RICO claim fails as a matter of law. *See Indah v. S.E.C.*, 661

F.3d 914, 922 (6th Cir. 2011) (declining to consider whether the Securities Exchange Act of 1934's nationwide service of process provision provided personal jurisdiction because the plaintiff had failed to state a claim under the act). Plaintiffs cannot use a meritless federal claim to manufacture federal jurisdiction over state-law disputes that belong in another forum.

F. Conclusory Jurisdictional Allegations Are Insufficient

The Complaint's jurisdictional allegations are bare legal conclusions entitled to no weight. Paragraph 10 asserts that venue and personal jurisdiction exist "because a substantial part of the events or omissions giving rise to the claim occurred in Tennessee and the Defendants committed tortious acts in the State of Tennessee." (Compl. ¶ 10). This is precisely the type of "threadbare recital" that *Iqbal* and *Twombly* hold to be insufficient. A plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The specific factual allegations in the Complaint -- or their absence -- refute, rather than support, Tennessee jurisdiction. *Id.* Plaintiffs have failed to carry their burden.

For all of the foregoing reasons, this Court lacks personal jurisdiction over Defendants. The exercise of jurisdiction would violate constitutional due process because Defendants lack minimum contacts with Tennessee and did not purposefully avail themselves of the privilege of conducting activities here. The Complaint should be dismissed in its entirety pursuant to Rule 12(b)(2).

## II. Count 1 fails to state a plausible RICO Claim pursuant to Rule 12(b)(6)

Even if this Court determines that it has personal jurisdiction -- which it does not -- Plaintiffs' RICO claim fails as a matter of law on multiple independent grounds. The RICO claim

is the sole federal claim and the only basis for subject-matter jurisdiction. Its dismissal is not merely warranted, but it is compelled by binding precedent.

A. The Complaint Fails to Allege a RICO Enterprise Distinct from the RICO Persons

Under 18 U.S.C. § 1962(c), the RICO "person" who conducts the affairs of an enterprise must be distinct from the "enterprise" itself. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). And the enterprise must be distinct from the alleged pattern of racketeering activity. *See Ouwinga v. Benistar 419 Plan Servs., Inc.* 694 F.3d 783, 793 (6th Cir. 2012). This "distinctness" requirement is a threshold element of any § 1962(c) claim. The Complaint alleges in conclusory fashion that the enterprise is an "association-in-fact of Pierce and Walker" (Compl. ¶ 105). Even viewing the allegations in the Complaint in the light most favorable to Plaintiffs, the Complaint does not allege that "each Defendant was participating in (or conspiring to participate in) the affairs *of the alleged association-in-fact enterprise*, rather than merely participating in [his] *own* affairs." *Envision Healthcare Operating, Inc. v. United Healthcare Servs., Inc.*, No. 3:22-CV-00693, 2026 WL 1623108, at *13 (M.D. Tenn. June 4, 2026) (Richardson, J.). The Complaint offers no factual allegation that supports the existence of an association-in-fact nor an enterprise distinct from the conduct alleged.

This fatal deficiency is compounded by Count 4 (Alter Ego), which alleges that DNA -- the purported "instrumentality" of the enterprise (¶ 105) -- is Defendants' alter ego (¶¶ 124–127). Defendants cannot be distinct from their own alter ego. Under Plaintiffs' own theory, there is no enterprise separate from the Defendants themselves. An association-in-fact enterprise requires a structure with a purpose, relationships, and longevity separate from the pattern of racketeering. *See Boyle v. United States*, 556 U.S. 938, 946 (2009). The Complaint alleges no facts showing that

Defendants were part of any distinct enterprise with an independent structure. The distinctness requirement is not satisfied, and the RICO claim must be dismissed.

B. The Complaint Fails to Allege a "Pattern" of Racketeering Activity

A civil RICO "pattern" requires at least two predicate acts that are (1) related and (2) exhibit "continuity" -- either closed-ended continuity (a series of predicates extending over a substantial period) or open-ended continuity (a specific threat of continuing criminal activity). *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–42 (1989). The continuity requirement "ensures that RICO is limited to addressing Congress's primary concern in enacting the statute, i.e. long-term criminal conduct." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) (citing *H.J., Inc.*, 492 U.S. at 241-42). The Complaint fails to satisfy either form of continuity.

The Complaint alleges a single scheme with a discrete objective: defrauding a limited set of DNA investors and employees regarding one company. (Compl. ¶ 105). Assuming Plaintiffs' allegations are true -- which Defendants deny -- this is precisely the type of single-episode fraud that does not constitute a RICO pattern. *See Aces High*, 768 F. App'x at 456-58 (finding that the plaintiffs' allegations that defendants engaged in a thirteen-month scheme to defraud and extort the plaintiffs failed to establish a pattern of racketeering activity). The alleged predicates all relate to one venture, involve the same limited group of victims, and share a single objective. A scheme with a discrete goal directed at a finite set of victims does not establish the continuity required for a RICO pattern. *See id.*

Plaintiffs cannot establish open-ended continuity because there is no "specific threat of repetition extending indefinitely into the future." *H.J. Inc.*, 492 U.S. at 242. The Complaint itself alleges that DNA has been "destroyed" and that Defendants have "abandoned" the enterprise. (Compl. ¶¶ 96-103). There can be no threat of continuing racketeering activity when the alleged

vehicle for the scheme no longer exists. The RICO claim fails for lack of a cognizable pattern and should be dismissed with prejudice.

C. The Predicate RICO Acts Are Not Pled with Rule 9(b) Particularity

RICO claims predicated on mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343) must be pled with particularity under Federal Rule of Civil Procedure 9(b), specifying the "who, what, when, where, and how" of each fraudulent communication. *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1047-48 (6th Cir. 2023) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

The Complaint fails this standard in two respects. First, it engages in impermissible group pleading -- attributing conduct collectively to "Walker and Pierce" without specifying which defendant made which statement, when, to whom, and through what medium. *See United States v. Se. Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 583 (M.D. Tenn. 2021) (explaining that group pleading is impermissible under Rule 9(b)). Second, it relies heavily on "information and belief" allegations without identifying the specific speaker, date, content, or medium of each alleged communication. Pleading fraud on "information and belief" without supporting facts is insufficient. *See Sanderson*, 447 F.3d at 878. The failure to plead fraud with particularity is fatal to a RICO claim. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Because the fraud predicates are not pled with particularity, the RICO claim should be dismissed.

D. The PSLRA Securities-Fraud Bar Precludes the RICO Claim

The PSLRA provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation" of RICO. 18 U.S.C. § 1964(c). The Complaint expressly predicates the RICO claim on "[f]raud in the sale of securities"

(Compl. ¶ 106, first bullet). Taking that allegation as true, Plaintiffs by their own admission cannot rely upon that conduct to establish a RICO claim. That concession alone bars the claim.

Even setting that aside, the Complaint's framing cannot save it. The Complaint conflates distinct concepts: it labels the alleged fraud as involving "securities," while simultaneously acknowledging that investors did not purchase *tokens* directly from Defendants. (Compl. ¶¶ 65, 106). Rather, according to Plaintiffs' own allegations, investors purchased ownership interests and limited partnership ("LP") interests in DNA and related investment funds or special purpose vehicles ("SPVs") and their affiliated investment funds. (Compl. ¶ 65). Those ownership and LP interests are securities -- that is black-letter law. *See Williamson v. Taylor*, 645 F.2d 404, 423 (5th Cir. 1981); *Mayer v. Oil Field Sys. Corp.*, 721 F.2d 59, 65 (2d Cir. 1983) ("[A] limited partnership interest generally is a security . . . ."). The funds/SPVs, in turn, may have invested in various digital assets, but Plaintiffs' alleged injury stems from the sale of the LP interests, not from any direct purchase of a digital asset. Accordingly, the fraud that Plaintiffs have pled -- misrepresentations inducing investment in DNA's ownership and fund interests -- is securities fraud in substance, regardless of how Plaintiffs label it. *See Ouwinga*, 694 F.3d at 790 (explaining that the PSLRA bar applies to any predicate act based on conduct "that would have been actionable as securities fraud."). Plaintiffs cannot evade the PSLRA by relabeling securities fraud as mail or wire fraud. *See id.* The RICO claim is statutorily barred.

E. <u>Plaintiffs Lack RICO Standing</u>

Civil RICO standing requires injury to "business or property" that is proximately caused by the RICO violation. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004). Proximate cause under RICO, and by extension standing, is demanding: "the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply*

*Corp.*, 547 U.S. 451, 457 (2006). Plaintiffs' alleged injuries fail this test. The Complaint alleges lost equity value, lost bonuses, lost value of Coral, reputational harm, and impaired "ability to make money in his chosen field going forward." (Compl. ¶¶ 108–111.) Reputational harm is not cognizable "business or property" injuries under RICO. *See McGee v. City of Warrensville Heights*, 16 F. Supp. 2d 837, 848 (N.D. Ohio 1998); *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 949 (8th Cir. 1999) (Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of [civil RICO]."). And Plaintiffs' claims for future earnings are too "insubstantial, unforeseeable, speculative [and] illogical" to provide RICO standing. *Leasure v. AA Advantage Forwarders*, No. 5:03-CV-181-R, 2007 WL 925829 (W.D. Ky. Mar. 23, 2007) (quoting *Trollinger*, 370 F.3d at 614), *aff'd,* 276 F. App'x 438 (6th Cir. 2008). To the extent Plaintiffs allege injuries derivative of harm to DNA, those claims fail under *Holmes* because a plaintiff cannot pursue injuries that flow from harm to an entity in which he holds an investment position. *See Holmes*, 503 U.S. at 268–69. Simply put, Plaintiffs lack RICO standing.

F. The § 1955 and § 1960 Predicates Bear No Causal Nexus to Plaintiffs' Injuries

The illegal-gambling predicate (18 U.S.C. § 1955 -- relating to 2021 Puerto Rico poker games) and unlicensed-money-transmitting predicate (18 U.S.C. § 1960) bear no proximate causal relationship to Plaintiffs' alleged injuries. RICO requires that the plaintiff's injury be "proximately caused" by the racketeering activity. *See Holmes*, 503 U.S. at 268. The Complaint itself admits in footnote 3 that "[n]either Walker, nor Pierce are suspected of stealing the millions of dollars" from the poker games. (Compl. ¶ 30 n.3.) A predicate act that is concededly unconnected to the plaintiff's injuries cannot support a RICO claim. *See Anza*, 547 U.S. at 457 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the

alleged violation led directly to the plaintiff's injuries."). Defendants' alleged attendance at a 2021 poker game in Puerto Rico -- years before Plaintiffs made any investment or employment decisions -- has no causal connection whatsoever to Plaintiffs' 2024 and 2025 conduct and is wholly unrelated to the claims asserted in the Complaint. These predicates are textbook examples of pleading designed to inflame rather than to state a claim. They fail as a matter of law and should be stricken.

G. § 1962(b) Is Not Independently Pled

Although the Complaint references 18 U.S.C. § 1962(b) in its damages paragraphs (¶¶ 108–111), no separate count asserts a § 1962(b) claim, and the Complaint fails to allege the distinct "acquisition or maintenance" injury required under that subsection. Section 1962(b) prohibits acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity; such a claim requires proof of injury from the acquisition or maintenance itself, separate from the predicate acts. *See Aces High Coal Sales, Inc. v. Cmty. Bank & Trust of W. Ga.*, 768 F. App'x 446, 458 (6th Cir. 2019). No such injury is alleged. To the extent that Plaintiffs attempt to state a § 1962(b) claim, it fails for lack of proper pleading and should be dismissed.

For the foregoing reasons, Plaintiffs' RICO claim fails on at least seven independent grounds, each sufficient to require dismissal: (1) the alleged enterprise is indistinguishable from the RICO defendants, violating the distinctness requirement; (2) the Complaint fails to allege a cognizable pattern of racketeering activity; (3) the fraud predicates are not pled with Rule 9(b) particularity; (4) the PSLRA bars RICO claims predicated on securities fraud; (5) Plaintiffs lack RICO standing; (6) the gambling and money-transmitting predicates have no causal nexus to Plaintiffs' injuries; and (7) no § 1962(b) claim is properly pled. The Court should dismiss Count 1 with prejudice.

## III. The State Law Claims Should Be Dismissed for Lack of Supplemental Jurisdiction

The RICO claim is the sole federal claim and the only pleaded basis for subject-matter jurisdiction. (28 U.S.C. § 1331; Compl. ¶ 9.) Once the RICO claim is dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims (Counts 2–5) under 28 U.S.C. § 1367(c)(3). The Sixth Circuit has consistently held that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). This case is in its earliest stages -- no discovery has occurred, no scheduling order has issued, and no judicial resources have been expended on the merits. The state-law claims raise novel and complex questions of Puerto Rico, New Jersey, and Colombian law that should be resolved by courts with expertise in those jurisdictions. Principles of comity, federalism, and judicial economy all favor dismissal. The Court should decline to exercise supplemental jurisdiction over the state-law claims and dismiss Counts 2–5.

## IV. Scandalous and Immaterial Matter Should be Stricken (Rule 12(f))

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). While motions to strike are disfavored absent clear prejudice, they serve an important gatekeeping function where, as here, a complaint is laden with inflammatory allegations designed to harass, inflame, prejudice, and embarrass rather than state cognizable claims. *See Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Matter is "immaterial" if it has 'no bearing on the subject matter of the litigation,' while '[i]mpertinent

allegations include statements that are not necessary to the issues presented.'" *Wipperman*, WL 622769, at *1 (citation omitted). While courts have discretion in ruling on motions to strike, "[a] scandalous matter 'refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Id.* (citation omitted). The following allegations are both scandalous and immaterial -- included solely to harass Defendants, poison the jury pool, and generate prejudicial publicity -- and should be stricken:

**Paragraph 1:** The inflammatory characterization that Defendants "run pump and dump schemes between drug and alcohol induced benders and illegal high stakes poker games" is a salacious allegation that serves only to prejudice and inflame. (Compl. ¶ 1). It is not an element of any count, has no bearing on any claim for relief, and is unsupported by any factual allegation in the Complaint. The reference to "drug and alcohol induced benders" is a gratuitous smear with no factual support and no legal relevance and is designed solely to inflame and prejudice. It should be stricken.

**Paragraph 2:** Labeling Defendants as "fraudsters" in the introductory paragraph is a legal conclusion presented as epithet. Whether Defendants committed fraud is the ultimate issue for the factfinder. (Compl. ¶ 2). Calling Defendants "fraudsters" in the Complaint's second paragraph -- before a single factual allegation has been made -- serves no purpose other than to prejudice. *See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1382 (3d ed.) ("[A] pleading should not be used as a vehicle for publishing libelous statements about another party").

**Paragraph 14:** The guilt-by-association allegations that Pierce "presented Jeffrey Epstein with the opportunity to invest" and "lived with convicted pedophile Marc Collins-Rector" is utterly

irrelevant to any claim asserted. As is the gratuitous references to HBO's *Last Week Tonight* calling Pierce a "creepy cowboy from the future," his "entirely unicorn wedding" at Burning Man, and his 2020 presidential campaign. (Compl. ¶ 14). Jeffrey Epstein is not a party to this case, and his alleged crimes are irrelevant to Plaintiffs' investment and employment claims arising in 2024 and 2025. The sole purpose of these references is to smear Defendant Pierce through association with unrelated third parties and through ridicule.

**Paragraphs 26–30:** The Court should strike the entire narrative concerning the 2021 Puerto Rico poker games, including the third-party hacking, the alleged theft of $2–3 million, and the "Jacob" purported suicide message. (Compl. ¶¶ 26-30). The Complaint itself admits in footnote 3 that "[n]either Walker, nor Pierce are suspected of stealing the millions of dollars." (Compl. ¶ 30 n.3.) These allegations have no nexus whatsoever to Plaintiffs' claims, which arise from 2024 and 2025 investment and employment decisions -- not from a 2021 poker game in which Defendants are concededly not suspected of any wrongdoing. The highly inflammatory character of these allegations -- particularly the suicide narrative involving a third party -- serves only to shock, prejudice the jury, and embarrass Defendants. They should be stricken in their entirety.

The prejudicial and salacious nature of these allegations far outweighs any conceivable relevance to Plaintiffs' claims. Striking this matter is necessary to prevent undue prejudice to Defendants, to ensure that this litigation proceeds on the merits of the claims actually asserted, and to preserve the dignity of this Court's proceedings. *See Frisby*, 669 F. Supp. 2d at 867 (citing *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822). The Court should grant Defendants' Motion to Strike.[1]

[1] Defendants reserve all rights and claims, including, but not limited to, claims in Puerto Rico and New Jersey, arising from Plaintiffs' apparent use of confidential, proprietary, and/or privileged information belonging to DNA in the Complaint. Defendants do not seek to seal the Complaint at this juncture given the procedural posture of this case, but

## Conclusion

For the foregoing reasons, Defendants Brock Pierce and Scott Walker respectfully request that this Court: (1) dismiss the Complaint in its entirety pursuant to Rule 12(b)(2) for lack of personal jurisdiction over Defendants, who are Puerto Rico residents with no constitutionally sufficient contacts with Tennessee and whose alleged conduct did not occur in and is not connected to this forum; (2) alternatively, dismiss Count 1 (RICO) with prejudice pursuant to Rule 12(b)(6) because the RICO claim fails on multiple independent grounds, each sufficient to require dismissal; (3) decline to exercise supplemental jurisdiction over Counts 2–5 and dismiss those claims without prejudice; (4) strike the scandalous and immaterial allegations identified herein pursuant to Rule 12(f); and (5) grant such other and further relief as this Court deems just and proper.

Dated: August 3, 2026

---

Defendants' decision not to seek sealing shall not constitute a waiver of any claims against Plaintiffs or others arising from the wrongful acquisition, use, or disclosure of DNA's confidential information.

Respectfully submitted,

By:*/s/ William J. Hughes, Jr.*

**Porzio Bromberg & Newman**
William J. Hughes, Jr. (*pro hac vice*)
5 Sylvan Way
Parsippany, NJ 07054
Telephone: (973) 538-4006
Facsimile: (973) 538-5146
Email: wjhughes@pbnlaw.com

**Womble Bond Dickinson (US) LLP**

Philip N. Elbert, TN Bar No. 009430
Satchel Fowler, TN Bar No. 039624
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
Telephone: (629) 312-1182
Facsimile: (202) 261-0023
Email: Philip.Elbert@wbd-us.com
Email: Satchel.Fowler@wbd-us.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF electronic filing system on all counsel of record this the 3rd day of August, 2026.

Ryan Downton
**The Texas Trial Group, P.C.**
875 Carr 693, Suite 103
Dorado, PR 00646
Telephone: (512) 680-7947
ryan@thetexastrialgroup.com

*Attorneys for Plaintiffs*

*/s/ William J. Hughes, Jr.*
William J. Hughes, Jr.